## CARRIE E. SUITS v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.[1]

February 1, 1918.

No. 20,677.

**Mailing and receipt of letter — finding sustained.**

1. The trial court did not err, upon the evidence stated in the opinion, in finding that a letter offered in evidence by defendant was not mailed to or received by the person to whom it was addressed.

**Same — when presumption of receipt applies.**

2. The presumption that a properly mailed letter will in the due course of mail reach the person to whom it is addressed has application only where the act of mailing is unquestioned or conclusively shown.

**Benefit insurance — delayed payments — waiver of by-law.**

3. The practice and custom of defendant, an accident benefit insurance association, in permitting and receiving from its members the payment of dues and assessments after the due date thereof, *held*, following Mueller v. Grand Grove U. A. O. D. 69 Minn. 236, not only a waiver of the failure to pay within the time fixed by the laws of the order, but also a waiver of the by-laws declaring a forfeiture for the default and an estoppel to invoke the same in an action on the contract.

**Same — reinstatement of suspended member — by-law inapplicable.**

4. The provisions of the laws of the association limiting its liability, where a suspended member has been restored or reinstated to good standing, to injuries thereafter suffered, have no application where no suspension was declared, or where a suspension, occurring automatically by reason of the default, has been waived by the association.

Action in the district court for Lyon county to recover $6,300 upon an accident insurance policy. The answer alleged that at the time of the death of plaintiff's husband and long prior thereto he had failed to pay his dues and was not a member of defendant in good standing. The case was tried before Olsen, J., who made findings and ordered judgment in

[1]Reported in 166 N. W. 222.

favor of plaintiff. From an order denying its motion for amended findings or a new trial, defendant appealed. Affirmed.

*Kerr, Fowler, Schmitt & Furber,* for appellant.

*Robinson & English,* for respondent.

BROWN, C. J.

Action to recover upon an accident insurance policy in which plaintiff had judgment, and defendant appealed from an order denying its motion for an amendment of the findings of the trial court or a new trial.

Defendant is a mutual benefit accident insurance association organized under the laws of the state of Ohio, and, through local or subordinate councils, conducting its insurance business on the assessment plan in that and other states including South Dakota and Minnesota. The company possesses and exercises the power and authority usually granted by law to like associations. Its insurance contracts are formed through the local councils where applicants are received into membership in the association, subject to the laws, rules and regulations imposed by the grand council. Its revenues are derived wholly from dues and assessments levied upon the members and these are collected through the administrative officers of the local councils.

It appears without dispute that David M. Suits was received into the association and became a member of Local Council No. 111, located at Huron, South Dakota, on May 28, 1900. The usual certificate of membership was issued to him, and defendant thereby became obligated, in the event the insured lost his life solely by accidental means, to pay the beneficiary therein named, plaintiff herein, who was his wife, the sum of $6,300. On March 28, 1915, the insured lost his life by accidental means, and thereby defendant became liable for the full amount of the policy, unless the membership of insured and all rights under the contract were, prior to the accident, terminated and forfeited by his failure to pay an assessment and certain dues which fell due about a month prior to his death. The dues and assessment so in default were due on February 24, preceding the death, and the failure to pay the same is not questioned, and defendant by its answer interposed the default in defense to the action. Plaintiff in reply alleged a waiver of the default by a practice and custom of defendant during the preceding years of accepting and re-

ceiving dues and assessments from members, including decedent, at ir-
regular periods after the due date thereof and not insisting upon a for-
feiture as declared by the laws of the order. The trial court found that
defendant waived the default and was estopped to insist upon a for-
feiture, and judgment was ordered for plaintiff.

The assignments of error present two questions, namely: (1)
Whether the court erred in denying defendant's motion for amended find-
ings; and (2) whether there was a waiver of the forfeiture resulting from
the failure to pay the dues and assessments referred to at or prior to the
due date thereof.

1. It appears without substantial dispute that for several years prior
to July, 1914, it had been the custom and practice of the association, act-
ing through the local council of which decedent was a member, to over-
look defaults in the payment of assessments and dues, and to accept and
receive them at irregular periods of delinquency, without any attempt to
enforce the by-laws declaring a forfeiture. The custom was recognized
as detrimental to the best interests of the association and an attempt was
made in July, 1914, to bring it to an end. With that purpose in view
the local council of which decedent was a member formally ordered and
directed the secretary thereof to notify all members that in the future the
constitution and laws of the order must be complied with, payments of
dues and assessments made within the time thereby required, in default
of which the delinquent members would be suspended, and rights under
the insurance contract forfeited as by such laws provided. In compliance
with that order the secretary prepared a circular letter, stating therein
that by order of the council the "practice of the secretary, in carrying
members who had not remitted for their dues and assessments, must be
discontinued," and that in the future the laws would be enforced and
suspensions ordered when not complied with by the members.

It is contended by defendant that this letter was mailed to and received
by each member of the local council, including decedent, and that it ef-
fectually terminated the practice of overlooking defaults, and fully re-
stored the operation of the laws requiring a punctual payment of dues
and assessments. It may be conceded that if the letter reached decedent
it terminated the objectionable practice and restored the effectiveness of
the laws of the order. But the court found that the letter was not mailed

to or received by decedent. If the finding is sustained there is an end of this branch of the case, and there was no error in the refusal to amend or change the finding on defendant's motion.

The cause was submitted to the court below upon an agreed statement of facts in which, among other things, it was stipulated that if the secretary of the local council were present and sworn as a witness in the cause, he would testify that he prepared the letter pursuant to the directions of the council, and on the fifteenth of July, 1914, according to his best belief, inclosed copies thereof in envelopes properly addressed to all members of the council, including decedent, mailing the same with the postage duly paid for the usual transmission and delivery by the postal authorities; that each envelope was indorsed on the face thereof with return directions, and that the one mailed to decedent was never returned. That the witness would further testify that he had no particular recollection of mailing the particular letter to decedent, but he believes that he did so because of his habit and custom of mailing all letters and notices to each member of the council. It was also stipulated that decedent was a methodical man, and that plaintiff, his wife, would testify that it was his practice to call her attention to his correspondence; that her attention was at no time called to a letter of the character of the one here in question, and that after the death of decedent the letter was not found among his papers, and plaintiff believes that no such letter was ever received by him.

The evidence, or what would have been evidence had the witnesses been called and examined on the trial, leaves the question whether the letter was mailed to and received by decedent in some doubt. But after careful consideration of the matter we conclude that the findings of the court thereon should not be disturbed. The findings are not clearly against the evidence. Such has been the conclusion of other courts upon substantially similar evidence. Payn v. Mut. R. Assn. 2 How. Pr. (N. S.) 220; Molloy v. Supreme Council, 93 Iowa, 504, 61 N. W. 928; Jackson v. Northwestern Mut. R. Assn. 78 Wis. 463, 47 N. W. 733. The proposed testimony of the secretary of the local council tends strongly to sustain the claim that the letter was properly mailed to decedent, but is not conclusive. Hastings v. Brooklyn Life Ins. Co. 138 N. Y. 473, 34 N. E. 289; Supreme Lodge v. Johnson, 78 Ind. 110. The presumption that

a properly mailed letter will reach the person to whom addressed (Backdahl v. Grand Lodge A. O. U. W. 46 Minn. 61, 48 N. W. 454), has application only when the act of mailing is unquestioned or conclusively established. The fact that subsequent to the date of the letter decedent paid certain dues to the secretary of the association in advance, and the further fact that the circular letter suggested that all members do so, though in a measure significant, as tending to show the receipt of the letter by decedent, are not conclusive. We are not justified in assuming that no other such payments were ever made by him. The record is silent upon the question.

2. The constitution and laws of the association contain various provisions upon the subject of dues and assessments and the payment thereof, declaring the effect of a failure to pay within the time fixed therefor, all of which are here of no special importance except section 3 of article 7, which treats of the delinquency of insured members, as distinguished, as we understand the matter, from those who are members without insurance. The section provides that, if any insured member fails to pay any or all of the dues and assessments levied against him when and as the same become due, he shall immediately on the happening of such default become delinquent and cease to be in good standing as such insured member, and he and every person claiming by, through or under his certificate of insurance "shall be suspended from any and all rights to indemnity or benefits." The section further provides: "Should such delinquent member at any time regain his good standing as an insured member in the order his restoration thereto shall in no wise operate to entitle him or anyone claiming * * * under him * * * to indemnity or benefits on account of any accident or injury received by him while not in good standing."

It is contended by defendant that by these provisions of the laws of the order the failure to pay assessments when due operates automatically to suspend the member in default, and that the only effect to be given the act of paying delinquent dues, and the act of the association in accepting them, is to restore the member to good standing, subject to the limitation that restoration to good standing shall not entitle a member or those claiming under his certificate to indemnity for injuries received during the period of suspension. And upon this ground defendant seeks to dis-

tinguish the case from Mueller v. Grand Grove U. A. O. D. 69 Minn. 236, 72 N. W. 48, and other like cases. We are unable to concur in that view of the case. While the automatic suspension cannot be questioned, the association laws are specific in that respect, it is clear that the provisions limiting the rights of suspended members on restoration to good standing are inapplicable to the facts here presented.

The right of voluntary restoration by the payment of delinquent dues is not given, and the provisions of the constitution upon which defendant relies, properly construed, can have application only to such members as have been restored to membership and to good standing in the manner expressly provided for and permitted by the laws of the order. So far as we are informed by the record there is but one method of such restoration, either provided for or recognized by the association, and that is by petition to and favorable action by the local council of which the petitioner is a member. A restoration to good standing effected in that manner is subject to the reservation of nonliability for injuries received by the insured during the period of suspension. But the record before us furnishes no suggestion that decedent had ever been suspended, or that he ever applied for restoration to good standing in the order. He was at no time treated by the association as under suspension, and his delinquent dues were accepted without intimation on its part that he was either in default or not in good standing. In this situation of the case the contention of defendant cannot be sustained. It is probable that in a given case the payment of delinquent dues and the acceptance thereof by the association might be treated as an application for reinstatement in the order, notwithstanding the existence of an otherwise expressly prescribed method of restoration. But such effect cannot be given the payment and acceptance shown in this case. It does not appear that the association ever permitted restoration to good standing other than in the manner expressly provided by its laws. In this respect the case comes within the rule applied in Leland v. Modern Samaritans, 111 Minn. 207, 126 N. W. 728; and Villmont v. Grand Grove U. A. O. D. 111 Minn. 201, 126 N. W. 730, where on similar facts it was held that the question whether the payment of delinquent dues and assessments was for the purpose of gaining restoration to good standing in the order, or for the purpose of maintaining an existing good standing was one of fact. In those cases it ap

peared that the by-laws there before us gave to suspended members the right to reinstate themselves by voluntarily paying all delinquent dues. No such right appears in this case. The payments by decedent, therefore, are to be attributed to a purpose of maintaining a recognized existing good standing, rather than for the purpose of regaining lost rights. Reisz v. Supreme Council, 103 Wis. 427, 79 N. W. 430.

The case differs from Ward v. Merchants L. & C. Co. infra, page 262, 166 N. W. 221. In that case there was a provision of the contract expressly limiting the effect to the acceptance of an overdue assessment. No such provision is found in the contract in this case.

It follows that the case is controlled by the rule laid down in Mueller v. Grand Grove U. A. O. D. supra. Defendant waived the default of decedent to pay the dues and assessments in question, and by the acceptance thereof estopped itself from invoking the forfeiture. The case of Gagne v. Massachusetts B. & Ins. Co. (N. H.) 101 Atl. 212, sustains our decision in the Ward case, but is not in point in this case.

Order affirmed.